UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:01CV2290 (MRK) |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 32 MEDLEY LANE, | : | |
| BRANFORD, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, AND | : | |
| | : | |
| Defendant. | : | February 25, 2005 |
| | : | |
| [CLAIMANTS: HAROLD E. VON HOFE, | : | |
| AND KATHLEEN M. VON HOFE] | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF THE JURY'S VERDICT OF FORFEITURE OF THE ENTIRE DEFENDANT PROPERTY**

**I.     BACKGROUND**

On February 15, 2005, after less than an hour of deliberations, the jury in the above-captioned case, ate lunch and returned a verdict in favor of the Plaintiff, United States of America.  Specifically, the jury unanimously found that the Government had proven by a preponderance of the evidence that there was a substantial connection between the Defendant property, 32 Medley Lane, Branford, Connecticut and illegal drug activity in violation of federal law punishable by more than a year imprisonment.  Further, the jury unanimously found that the Claimant, Kathleen von Hofe, after testifying at trial, failed to prove by a preponderance of the

evidence that she was an innocent owner of the Defendant property.[1]

Pursuant to 18 U.S.C. § 983(g)(1), Harold and Kathleen von Hofe petitioned the Court to determine whether the forfeiture was constitutionally excessive. On February 17, 2005, a post-verdict evidentiary hearing was conducted by the Court to determine whether the forfeiture of the Defendant property was grossly disproportional.

In Austin v. United States, 509 U.S. 602 (1993), the Supreme Court held that a civil forfeiture action brought pursuant to 21 U.S.C. § 881 (a)(7) is subject to the Excessive Fines Clause of the Eight Amendment to the United States Constitution. To determine whether a forfeiture constitutes an excessive fine for purposes of forfeiture, the court must determine whether the forfeiture is "grossly disproportionate to the gravity of the defendant's offense." United States v. Bajakajian, 524 U.S. 321 (1998). This requires the court to balance the seriousness of the offense against the harshness of the forfeiture. United States v. 154 Manley Road 4 F. Supp.2d 65, 69 (D.R.I. 1998).

It is incumbent upon the Claimants, not the Government, to establish that the forfeiture was "grossly disproportional" by a preponderance of the evidence. The Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000), effective August 23, 2000, provides, at 18 U.S.C. § 983(g):

> (1) The claimant under subsection (a)(4) may petition the court to determine whether the forfeiture was constitutionally excessive.
> (2) In making this determination, the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture.

---

[1] The Claimant, Harold von Hofe, never asserted an affirmative defense as an innocent owner of the Defendant property.

(3) The claimant shall have the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury.

## II. ARGUMENT

### A. Claimants Failed to Prove That The Forfeiture of the Defendant Property in its Entirety is Constitutionally Excessive

#### 1. Harold von Hofe's Testimony at the 8th Amendment Hearing Supports Forfeiture of Entire Defendant Property

Although Harold von Hofe, failed to testify at trial, or offer any evidence whatsoever to rebut the Government's case for forfeiture of the Defendant property. He did testify at the 8th Amendment Hearing. During cross-examination Harold von Hofe testified to the following:

i. He admitted to receiving ketamine from his sons (and other sources) which further corroborates the testimony of Anthony Huneycutt that he exchanged ketamine for marijuana from Alaric von Hofe on the first floor of the Defendant property. see Transcript of February 17, 2002 Post-Trial Hearing ("Transcript") at 28;

ii. He admitted ownership of the syringes and empty ketamine vials discovered in the basement by law enforcement. see Transcript at 28;

iii. He admitted that the syringes were not being used for the family pets (in direct conflict with Kathleen von Hofe's trial testimony). see Transcript at 58;

iv. While denying that he placed "shake," or the unused parts of marijuana plants near the driveway as discovered by law enforcement, he did admit to burying the unused portion of marijuana plants in the backyard of the defendant property rather than place them in the garbage to avoid detection by third parties (evidence

|   |   |
|---|---|
|   | of further facilitation by the Defendant property, in violation of 21 U.S.C. § 881(a)(7), using the backyard to conceal evidence of the indoor marijuana grow). see Transcript at 42; |
| v. | He admitted to making the marijuana grow available to his son, Alaric. see Transcript at 37; |
| vi. | He admitted to dispensing marijuana to his friends 1-2 times a week, smoking marijuana in the basement with them. see Transcript at 30-31; and |
| vii. | He admitted to transporting marijuana seeds into the United States knowing that it was against the law. see Transcript at 46. |

Harold von Hofe's credibility was impeached during the 8th Amendment Hearing. He admitted, in response to a question posed by the Court, that he had purchased controlled substances prior to establishing his indoor marijuana grow.[2]  see Transcript at 24.  However, in his earlier response to Government Interrogatories, he represented under the penalties of law that he had never purchased a controlled substance prior to December 4, 2001.  See Government's Trial/Hearing Exhibit 9, Interrogatory response No. 11.  During cross-examination Harold von Hofe, a Doctor of Comparative Literature from Yale University, responded that he misunderstood Interrogatory Number 11 as asking whether he had ever sold a controlled substance.  He was then directed to Interrogatory Number 12 which specifically addressed the issue of sales of controlled substances. id. at Interrogatory Response No. 12.  see Transcript at

---

[2]Harold von Hofe testified earlier in the Hearing that he had used drugs since the 1960s and that he has smoked marijuana daily. He also testified that the marijuana indoor grow was only operational for about one year. The Court had inquired as to the dollar amounts paid by Harold von Hofe prior to operating his indoor marijuana grow.

43-45.

Harold von Hofe's testimony at the 8th Amendment Hearing demonstrated that the Defendant property was more intimately involved in the facilitation of the felonious manufacture/cultivation of marijuana. He acknowledged ownership of the basement marijuana grow, and its operation for at least one year. His testified that he had injected ketamine intramuscularly which he received from one of his sons (and other unnamed sources). Identifying his sons as sources for Ketamine only corroborates Anthony Huneycutt's trial testimony that he exchanged ketamine for marijuana on the first floor of the Defendant property. Finally, Harold von Hofe directly implicates the physical grounds of the Defendant property as a means to conceal evidence of the indoor marijuana grow from third parties, by burying the remains of marijuana plants in the yard. This is just another way in which the Defendant property was used to facilitate the illegal manufacture of marijuana.

    2. <u>Kathleen von Hofe's Testimony at the 8th Amendment Hearing Supports Forfeiture of Entire Defendant Property</u>

Kathleen von Hofe's testimony during the 8th Amendment Hearing failed to demonstrate that forfeiture of the entire Defendant property would be grossly disproportionate in violation of the Excessive Fines Clause of the 8th Amendment. Kathleen von Hofe testified at the 8th Amendment Hearing that:

  i. Despite the jury unanimously finding that she was not an innocent owner, Kathleen von Hofe continues to assert under oath that she is an innocent owner. <u>see</u> Transcript at 94-95;

  ii. The appraised value of the Defendant property is approximately $248,000 and she

>   was willing to pay that amount to the Government to prevent the forfeiture of the Defendant property. see Transcript at 76, 93;
>
> iii.  The $248,000 the Claimants offered the Government to settle this case would be provided by her father-in-law. She amended her testimony that they (the Claimants) would have to pay a mortgage (Harold von Hofe, Sr. is 91 years old). see Transcript at 93, 96.

Claimants' testimony at the 8th Amendment Hearing revealed that Harold von Hofe's parents provided financial assistance in the purchase of the Defendant property, as well as satisfaction of the mortgage.[3] see Transcript at 96-99. It was also revealed at the Hearing that Harold von Hofe, Sr. is the source of the funds being offered by the Claimants to pay the Government $248,000 in lieu of forfeiture. see Transcript at 93. The prospects of obtaining a mortgage to pay the 91 year old, Harold von Hofe, Sr., does not satisfy the Claimants' burden to prove that forfeiture of the entire property is "grossly disproportionate" by a preponderance of the evidence.

Finally, Kathleen von Hofe testified at the 8th Amendment Hearing that the Claimants were willing to pay $248,000 to settle this case with the Government and prevent forfeiture of the Defendant property. The Claimants' willingness to pay the Government $248,000, the full appraised value of the Defendant property, is inconsistent with their claim that forfeiture of the entire Defendant property is excessive and in violation of the 8th Amendment. Claimants'

---

[3] As of the date of filing this memorandum, the Government has not received any documentation from the Claimants in support of their testimony at the February 17th Hearing with respect to their acquisition of the Defendant property including: down payment; mortgage instrument; mortgage payments; payment of property tax; and satisfaction of mortgage.

petitioning of the Court for an 8th Amendment Hearing was merely a veiled attempt to force the Government to accept the cash value of the Defendant property, and allow the Claimants to continue to reside at that location. If the Claimants truly believed that forfeiture of the entire Defendant property was unconstitutional, then their offer of judgment would have been for a dollar amount less than the full appraised value of $248,000.

    B.    Forfeiture of the Defendant Property in its Entirety is Not Grossly Disproportionate

        1.    The Manufacture of Marijuana is a Felonious Offense

In United States v. Bajakajian, 524 U.S. 321, 118 S. Ct. 2028 (1998), aff'g 84 F.3d 334 (9th Cir. 1996), it was held that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." id. at 334. A "punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." id. "Excessive means surpassing the usual, the proper, or a normal measure of proportion." id. at 335.

In Bajakajian, the respondent's crime was solely a reporting offense. "It was permissible to transport the currency out of the country so long as he reported it." id. at 337. Further, the Court found that the "respondent's violation was unrelated to any other illegal activities." id. at 338. In this case, the Claimants' indoor manufacture of marijuana at the Defendant property is illegal and patently prohibited by law (there is no federal misdemeanor for the manufacture of marijuana). All individuals engaged in the manufacture of marijuana fit into the class of persons for whom the statute was designed. The Claimants made statements to law enforcement on December 4, 2001. Harold von Hofe admitted to growing marijuana in the Defendant property to

Special Agent Hibbert and Detective Ayr. Kathleen von Hofe admitted to Special Agent Rubinstein that she knew of the marijuana being grown in the Defendant property. At trial, she presented no evidence (other than her general denial of knowledge) to prevent or stop the manufacture of marijuana in her home. The jury unanimously rejected her innocent owner affirmative defense that she did not know of the marijuana indoor grow prior to December 4, 2001.

### 2.    Other Illegal Activities

Evidence presented at trial demonstrated that the manufacture of marijuana at the Defendant property was related to other illegal activities such as the sale, distribution, and dispensing of marijuana to third parties. Special Agents Hibbert and Wardrop testified as to statements made by Harold von Hofe concerning the sale of marijuana, the barter of marijuana, and providing his son, Alaric, access to the indoor marijuana grow. Further, Harold von Hofe testified at the February 17th Hearing that he would share (distribute or dispense) marijuana with his friends in the basement of the Defendant property. Anthony Huneycutt testified at trial that he had used drugs in the Defendant property, exchanged ketamine for marijuana, and even purchased marijuana from Alaric von Hofe on the first floor, paying $200 for ½ an ounce.

### 3.    Harm to the Community

In Bajakajian, the Court determined that the harm caused by the respondent was minimal. The Court found that the respondent's failure to report his currency affected only one party, the Government, and in a relatively minor way. id. At 339. In this case, the harm caused by the Claimants was not minimal and had an adverse affect on the community. By illegally transporting marijuana seeds into the country from Holland, Harold von Hofe manufactured a

high-grade, potent marijuana. Special Agents Hibbert and Wardrop testified as to flourescent quality of the marijuana crop, indicating that it was of high-grade. Anthony Huneycutt testified that it was the best marijuana that he had ever smoked. Harold von Hofe's statements to Special Agent Hibbert and Detective Ayr that he had bartered marijuana for services such as landscaping, roofing and painting placed his marijuana into the hands of other members of the community who were free to use it or redistribute it through sale. Generally, services in exchange for compensation (including bartering) have state and federal tax consequences. Further, Kathleen von Hofe benefitted from her husband's bartering of marijuana. As the self-described "bread winner" of the family, individuals performing work at the Defendant property, enhancing or preserving its value, would have been monetarily compensated, but for receiving marijuana instead. The community was further harmed as marijuana was being exchanged for other illegal drugs, such as ketamine, inside the Defendant property. Harold von Hofe admitted to making marijuana available to his friends, one to two times a week when he smoked with them in his basement. The Defendant property was the Claimants' sanctuary within the community for the manufacture, sale, exchange, and use of illegal drugs, including the marijuana grown in the basement. The Claimants, their family, friends, and associates are not permitted under law to use the Defendant property for illegal activities. The Defendant property has not been selectively targeted for federal forfeiture.[4]

---

[4] The following is a non-exhaustive list of recent indoor marijuana forfeiture cases in the District of Connecticut: United States v. 5 Dogwood Court, Branford, Ct., 3:00CV404 (JBA); United States v. 14 Ure Avenue, East Haven Ct., 3:01CV0079 (CFD); United States v. 9 Larksbur Lane, Burlington, Ct., 3:04CV1753 (MRK); United States v. 141 Budding Ridge, Southington, Ct., 3:04CV1720 (PCD); and United States v. 20 Farmingberry Drive, Southington, Ct., 3:04CV1719 (JBA).

4.        Evidence of Past and Future Marijuana Manufacture

Harold von Hofe told law enforcement that his indoor marijuana grow operation was in existence for at least one year. Special Agent Wardrop testified that the electrical usage at the Defendant property for that time period (2 ½ times the usage of comparable neighborhood residences) indicates that four marijuana grow cycles took place. Detective Ayr testified that he had received information of an indoor marijuana grow at the Defendant property as early as November 2000.

On December 4, 2001, law enforcement discovered 65 plants at various stages of growth in the basement of the Defendant property. Law enforcement also discovered three grocery bags containing "shake," the unused portion of marijuana plants in plain view next to a compartment used to dry marijuana. Aside from a green jar containing approximately three inches of marijuana buds, law enforcement never found the marijuana that had been recently harvested and dried. One can easily conclude that the marijuana discovered in the green jar was for Harold von Hofe's personal use. He did acknowledge to smoking marijuana daily at the Defendant property. As for the unaccounted marijuana, it is reasonable to conclude that it had been distributed through sales, sharing, or bartering as described by Harold von Hofe to law enforcement.[5] Only one marijuana smoking pipe was discovered in plain view by law enforcement in Harold von Hofe's study on December 4, 2001. see Government Trial Exhibits 2U and 3. Harold von Hofe testified at the February 17th Hearing that he smoked marijuana at night using a pipe. It is

---

[5]The absence of glassine bags at the Defendant property on December 4, 2001, commonly associated with the sale or distribution of drugs has little evidentiary value in light of the fact that the Claimants' marijuana grow was not mature for harvesting, drying, and further distribution. The marijuana that had been dried (as evidenced by the three bags of shake), not including the buds in the green jar, was gone as of the execution of the search warrant.

inconceivable to believe that the amount of marijuana manufactured at the Defendant property during the course of one year could be entirely consumed by an individual using a small smoking pipe at night (and 1-2 times a week with friends). Further, it was brought out during the February 18th Hearing that neighbors had observed a steady flow of individuals constantly visiting the Defendant property for short periods of time, and that it stopped immediately after the search warrant was executed on December 4, 2001.[6]

A close review of Government Trial Exhibit 2E reveals 32 rows of unused rock wool, each row containing 8 individual growing squares found in the basement of the Defendant property. Simple multiplication demonstrates that an additional 184 marijuana plants could be grown in the future from the Defendant property. Seeds were discovered at the Defendant property and Harold von Hofe had made statements to Special Agent Hibbert and Detective Duncan Ayr as to the cloning process of marijuana plants he employed to continue his grow operation. Clearly, the Defendant property was to be used in the future to further facilitate the illegal manufacture of marijuana.

    C.    <u>The Value of the Defendant Property Does Not Exceed the Maximum Fines That Could be Imposed On the Claimants</u>

A leading case is <u>United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.</u>, 175 F.3d 1304, 1309 (11th Cir. 1999). The Court of Appeals affirmed a forfeiture of real estate valued at

---

[6]The absence of firearms at the Defendant property is not inconsistent with the evidence presented at trial. Anthony Huneycutt testified that only a few people were allowed in the basement of the Defendant property (Shepard, who helped set up the grow, and Maldonado). Evidence was also introduced that Harold, Alaric and Morgan von Hofe knew of the indoor marijuana grow in the basement and only trusted associates were permitted access. It appears that the sale, distribution, and bartering of marijuana was usually with close friends and associates. There appears to have been little necessity for possession of firearms commonly associated with individuals who sell drugs indiscriminately to friends and strangers alike.

$70,000, from a drug seller who was involved in sales valued at total of $3,250. The Court rejected the Eighth Amendment claim, reasoning:

> Congress . . . in enacting criminal laws, has specified the maximum permissible fine for a given offense. . . [I]ts pronouncements regarding the appropriate range of fines for a crime represent the collective opinion of the American people as to what is and is not excessive. . . Consequently, <u>if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional</u>.

175 F.3d at 1309 (emphasis supplied). In a footnote to this section, the Court stated further, "[r]elatedly, the fact that a forfeiture within the congressionally mandated range of fines is presumptively constitutional does not mean that a forfeiture outside of that range is presumptively unconstitutional. . . A forfeiture far in excess of the statutory fine range, however, is likely to violate the Excessive Fines Clause. <u>Id</u>., n.9. Further, the personal characteristics of the owner, the character of his/her property, and the value of any remaining assets are irrelevant. <u>id. at 1311.</u>

See also <u>United States v. Riedl</u>, 164 F.Supp.2d 1196, 1199 (D. Hawaii 2003) ("If the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."). Cf. <u>United States v. Mackay</u>, 221 F.Supp.2d 1106, 1110 (N.D. Cal. 2002) (rejecting Eighth Amendment challenge to $729,454.92 total of penalties and treble damages assessed in False Claims Act case involving false medicare billing, relying in part on "availability of other penalties and the maximum penalties that could have been imposed," and reasoning "[t]he fact that the civil penalty and treble damage award requested by the Government and ultimately entered by the Court are far below the amounts which could have been imposed supports the conclusion that the judgment is not grossly

disproportionate to the gravity of [defendant]'s conduct . . . civil penalty awards in which the amount of the award is less than the statutory maximum do not run afoul of the Excessive Fines Clause."). United States v. Sherman, 262 F.3d 784 (8th Cir. 2001) (forfeiture of residence not excessive where value of house ($750,000) was less than the maximum fine under the Sentencing Guidelines; following Wilton Manors, infra); see also United States v. 3814 Thurman Street, 164 F.3d 1191 (9th Cir. 1999) (civil forfeiture case) (forfeiture of proceeds of false bank loan application, or property traceable thereto, is excessive where bank suffered no loss).  In considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence, as are the maximum penalties that could have been imposed under the Sentencing Guidelines.

   Bajakajian suggests that the maximum penalties under the Guidelines should be given greater weight than the maximum penalty authorized by statute, because the Guidelines take into consideration the specific level of culpability of the offender.  However, in the case at bar, the maximum penalty authorized by statute is identical to that imposed by the Guidelines.

   The Defendant property is valued at approximately $248,000.   Forfeiture of the entire property is not grossly disproportionate because a maximum criminal fine of one million dollars could be imposed on both Claimants statutorily, and through the United States Sentencing Guidelines for the federal drug charges.  Clearly, the value of the Defendant property does not exceed the maximum criminal fine.  An analysis of the statutory and U.S.S.G. calculations for Claimants Kathleen von Hofe and Harold von Hofe is provided below.

  1. Had Harold Von Hofe Been Convicted Federally in Violation of 21 U.S.C. §§ 841 and 846, the Maximum Fine Exceeds the Value of the Defendant Property

Forfeiture of the Claimants' interest in the Defendant property does not meet the "gross disproportionate" standard discussed in Bajakajian when considering the maximum federal criminal penalty for Harold von Hofe's illegal narcotics activities would be a term of imprisonment of 16 months and a million dollar fine.

Harold von Hofe would have been charged federally for the manufacture of 65 marijuana plants at the Defendant property with the intent to distribute or dispense, in violation of 21 U.S.C. § 841(a).[7]  Harold von Hofe's statutory maximum fine would be one million dollars as provided in § 841(b).  Through the United States Sentencing Guidelines, Harold von Hofe would begin at a level 14 as provided in U.S.S.G. §2D1.1.  Assuming he would receive a two level downward adjustment for acceptance of responsibility, and that he has no prior criminal history, Harold von Hofe would be in Zone C, at an offense level of 12.  His maximum sentence would be 16 months.  When considering the maximum fine he would be subject to federally under the Guidelines, U.S.S.G. §5E1.2(c)(4) reveals that the maximum fine is established by the statute (§ 841), which is one million dollars.

    2.    <u>Had Kathleen Von Hofe Been Convicted Federally for Conspiracy in Violation of 21 U.S.C. § 846, the Maximum Fine Exceeds the Value of the Defendant Property</u>

Kathleen von Hofe would have been charged with Conspiracy pursuant to 21 U.S.C. § 846. On December 4, 2001, Harold von Hofe told Special Agent Hibbert and Detective Ayr that

---

[7]Harold von Hofe would also be charged with conspiracy in violation of 21 U.S.C. § 846 in light of his statements to Special Agent Hibbert and Detective Ayr on December 4, 2001, that his son Alaric also smoked marijuana and could take from the grow.  This statement was not refuted at trial.  Further, in light of Anthony Huneycutt's testimony, it was presented at trial that Alaric exchange marijuana for ketamine and sold Huneycutt a ½ ounce of marijuana for $200.  For guideline purposes this charge need not be considered as the penalties are the same as those prescribed for the offense (§ 841).

Kathleen von Hofe knew of the marijuana grow in the Defendant property and that marijuana was smoked there. At trial, Harold von Hofe presented no evidence to refute or deny these statements that he had made to law enforcement. On December 4, 2001, Kathleen von Hofe told Special Agent Rubinstein that the marijuana grow was her husband's (Harold von Hofe) and her son, Alaric's. She never asked law enforcement where the marijuana grow had been discovered at the Defendant property. Nor did she ever express any surprise as to why law enforcement was executing a search warrant at the Defendant property. Her statements to law enforcement on December 4, 2001, clearly demonstrate her pre-existing knowledge of the indoor marijuana grow located within 15 feet of her bedroom.

    During its case-in-chief the Government provided evidence as to the proximity of the marijuana grows to Kathleen von Hofe's living area in the basement. The Government also presented evidence of the overwhelming smell of growing marijuana which dominated the basement living area as well as the first floor of the Defendant property. The Government also presented evidence of the loud noise the equipment used to manufacture marijuana indoors makes while operational (Special Agent Wardrop equated the noise of the grow lights and ballasts to that produced by a vacuum cleaner or an air conditioner). There were two areas of the basement with this loud, operational equipment. The Government presented evidence of the bright light emitted from the marijuana grow lights which Special Agent Wardrop described as blinding, as if looking directly into the sun. The Government introduced evidence of three shopping bags full of "shake" or the unused, unsmoked portions of marijuana plants which were

found in plain view by law enforcement next to the drying compartment for marijuana, located in the basement.

On cross-examination, Kathleen von Hofe conceded that there were no locks on the curtains that were allegedly used to conceal the marijuana grows located in the basement where she slept.  Further, she conceded that she was never told or instructed by her husband, Harold von Hofe, to stay out of any portion of the basement.  She also acknowledged that she knew her husband and her son, Alaric, smoked marijuana in the Defendant property. She even testified, rather definitively, that her son, Morgan, did not use marijuana (he was engaged in other substance abuse unknown to her).  She also acknowledged that she had seen marijuana seeds in the Defendant property prior to December 4, 2001.

The jury in this case, in almost a summary fashion, quickly rejected the Claimant, Kathleen von Hofe's innocent owner defense.  Clearly, the evidence presented at trial supports the Government's position that Kathleen von Hofe had knowledge of the manufacture of marijuana in violation of 21 U.S.C. §841.  As a trained health care professional and as a self-described "product of the sixties," sleeping within close proximity of an operational marijuana grow for at least one year,  it is inconceivable to believe otherwise.

Kathleen von Hofe would have been charged federally for conspiracy in violation of 21 U.S.C. § 846(a)[8] for the manufacture of 65 marijuana plants at the Defendant property with the intent to distribute or dispense,   Her statutory maximum fine would be one million dollars as

---

[8] For guideline purposes the conspiracy charge penalties are the same as those penalties prescribed for the 21 U.S.C. § 841.

provided in § 841(b). Through the United States Sentencing Guidelines, Kathleen von Hofe would begin at a level 14 as provided in U.S.S.G. §2D1.1. Assuming she would receive a two level downward adjustment for acceptance of responsibility (although she continues to maintain that she is an innocent owner even after the jury found otherwise), and that she has no prior criminal history, she would be in Zone C, at an offense level of 12. Her maximum sentence would be 16 months. When considering the maximum fine she would be subject to federally under the Guidelines, U.S.S.G. §5E1.2(c)(4) reveals that the maximum fine is established by the statute (§ 841), which is one million dollars. Accordingly, the statutory maximum fine and the maximum fine pursuant to the Guidelines are identical.[9]

**III.    CONCLUSION**

On February 15, 2005, the jury returned a verdict in favor of the Plaintiff, United States of America. The jury unanimously found that the Government had proven by a preponderance of the evidence that there was a substantial connection between the Defendant property, 32 Medley Lane, Branford, Connecticut and illegal drug activity in violation of federal law punishable by more than a year imprisonment. Further, the jury unanimously found that the Claimant, Kathleen von Hofe, failed to prove by a preponderance of the evidence that she was an innocent owner of the Defendant property. The jury unanimously found for the forfeiture of the Defendant property, in its entirety. The jury's verdict should remain intact. For the reasons set forth above, the Plaintiff, United States of America respectfully represents that forfeiture of the entire

---

[9]The Government would have charged Alaric von Hofe with violations of 21 U.S.C. §§ 841 and 846.

Defendant property is appropriate, consistent with the jury's verdict, and not in violation of the Excessive Fines Clause of the Eighth Amendment.

        Respectfully submitted,
        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        DAVID X. SULLIVAN
        ASSISTANT U.S. ATTORNEY
        P.O. BOX 1824
        NEW HAVEN, CT  06508
        (203) 821-3700
        CT03793

CERTIFICATE OF SERVICE

This is to certify that I have caused a copy of the within document was sent via regular, postage, prepaid, on this 25th day of February, 2005, to:

| | | |
|---|---|---|
| Claimants: | James F. Cirillo, Jr., Esq.<br>500 E. Main Street<br>Suite 326<br>Branford, CT  06405<br>(203) 488-9828 | (Harold von Hofe) |
| | Jonathan J. Einhorn, Esq.<br>412 Orange Street<br>New Haven, CT  06511<br>(203) 777-3777 | (Kathleen von Hofe) |

                        DAVID X. SULLIVAN
                        Assistant U.S. Attorney