**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO.    3:01cv2290 (MRK) |
| v. | : | |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 32 MEDLEY LANE, | : | |
| BRANFORD, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| [CLAIMANTS: HAROLD E. VON HOFE | : | |
| AND KATHLEEN M. VON HOFE] | : | |

**MEMORANDUM OF DECISION**

This is a civil forfeiture action brought by the United States against the home of Harold E.

von Hofe and Kathleen M. von Hofe (collectively, "Claimants") under the Civil Asset Forfeiture

Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), codified at 18

U.S.C. § 983.  Following a jury verdict for the Government finding that the von Hofes' home –

located at 32 Medley Lane, in Branford, Connecticut (the "Property") – was subject to forfeiture

and that Claimant Kathleen von Hofe was not an "innocent owner," Claimants petitioned this

Court under CAFRA to determine whether forfeiture of the Property would be "constitutionally

excessive" and if so, "to reduce or eliminate the forfeiture as necessary to avoid a violation of the

Excessive Fines Clause of the Eighth Amendment."  18 U.S.C. § 983(g)(4).  *See* Motion to

Determine Whether Forfeiture was Constitutionally Excessive [doc. #67]; Amended Answer to

Complaint by Kathleen M. von Hofe [doc. #43]; Amended Answer to Complaint by Harold E.

1

von Hofe [doc. #49]. For the reasons stated below, the Court concludes that forfeiture of

Claimants' interests in the Property does not violate the Excessive Fines Clause of the Eighth

Amendment.

## I.

## A.

As explained in an earlier decision in this case, familiarity with which is assumed, the

Court tried the issues raised by this civil forfeiture action in two steps. *See* Ruling and Order

[doc. #59]; *see also United States v. 32 Medley Lane*, No. 3:01cv2290(MRK), 2005 WL 465421

(D. Conn. Feb. 11, 2005). First, the Court held a jury trial focused on two issues. One issue was

whether the Property was subject to forfeiture under 21 U.S.C. § 881(a)(7).[1] On that issue,

CAFRA required the Government to prove by a preponderance of the evidence that there was a

substantial connection between the Property and a violation of federal narcotics laws punishable

by more than one year's imprisonment. *See* 21 U.S.C. § 983(c).[2] The offenses punishable by

---

[1] Title 21, Section 881(a) of the United States Code provides as follows:

The following shall be subject to forfeiture to the United States and no property
right shall exist in them: . . .
> (7) All real property, including any right, title, and interest (including any
> leasehold interest) in the whole of any lot or tract of land and any
> appurtenances or improvements, which is used, or intended to be used, in
> any manner or part, to commit, or to facilitate the commission of, a
> violation of this subchapter punishable by more than one year's
> imprisonment.

21 U.S.C. § 881(a)(7).

[2] The Second Circuit has held that "Congress may constitutionally impose a standard of
proof in [civil] forfeiture cases less stringent than would be required in criminal proceedings."
*United States v. Property of Francisco Aguilar*, 337 F.3d 225, 232 (2d Cir. 2003).

more than one year's imprisonment that were the basis of the Government's forfeiture claim at trial are found at 21 U.S.C. § 841(a) – which makes it illegal to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, the controlled substance of marijuana – and at 21 U.S.C. § 846 – which makes it illegal to conspire or attempt to conspire to do the acts prohibited by § 841(a).[3]

The second issue presented to the jury was whether Claimant Kathleen von Hofe was an "innocent owner" under CAFRA. The parties stipulated that the Property was jointly owned by Mr. and Mrs. von Hofe. *See* Joint Stipulation of Law & Fact [doc. #56] at 1.[4] Therefore, Mrs. von Hofe, who testified before the jury, bore the burden under CAFRA of proving by a preponderance of the evidence that she did not know of the illegal activity at her home that gave rise to the forfeiture. *See* 18 U.S.C. § 983(d)(2)(A)(i).[5] Mr. von Hofe did not assert an innocent

---

[3] Title 21, Section 841(a) states in relevant part that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a). Title 21, Section 846 states in relevant part that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

[4] This stipulation, along with others, is set forth in Joint Exhibit 1. The stipulations in Joint Exhibit 1 were explicitly referenced in the Court's final instructions to the jury. *See* Jury Instructions, Court Ex. 4, at 12 ("Joint Exhibit 1, which will be with you in the jury room, sets forth certain facts to which the parties have stipulated. The effect of a stipulation is to relieve the party with the burden of proving that fact from having to introduce evidence to prove it. Because the parties have agreed, you are to take such agreed facts as true for purposes of this case.").

[5] CAFRA provides an alternative basis for a finding that a claimant is an innocent owner – namely, that the claimant "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A)(ii). Mrs. von Hofe did not seek to avail herself of the alternative basis for a finding of innocent ownership under CAFRA.

owner defense, and he did not testify during the jury trial phase of the case.

The jury returned a verdict explicitly finding that the Government had satisfied its burden of establishing that the Property was subject to forfeiture and that Mrs. von Hofe had not shouldered her burden of proving that she was an innocent owner. *See* Jury Verdict [doc. #65]. After discharging the jury, the Court proceeded to the second phase of the case, in which the Court held a further evidentiary hearing – without the jury – on the issue of constitutional excessiveness. The parties agreed that in determining whether forfeiture of the Property was constitutional, the Court could consider the record (both the testimony and documentary evidence) from the jury trial as well as any additional evidence submitted by the parties during the evidentiary hearing before the Court. During the evidentiary hearing, both Mr. and Mrs. von Hofe testified, as did an agent of the Drug Enforcement Administration ("DEA"). The parties also submitted exhibits regarding the ownership of the Property and filed post-hearing briefs on excessiveness. *See* Government's Memorandum of Law in Support of the Jury's Verdict of Forfeiture of the Entire Defendant Property ("Gov't Post-Hr'g Mem.") [doc. #71]; Claimants' Post-Trial Memorandum ("Claimants' Post-Hr'g Mem.") [doc. #72]; Exhibits Attached to Claimants' Motion to Supplement the Record [docs. #73 & #75].

**B.**

The facts developed during the jury trial and evidentiary hearing are not particularly complicated. Mr. and Mrs. von Hofe, who have been married for twenty-seven years, have lived in their home at 32 Medley Lane for the past twenty-one years. *See* Claimants' Post-Hr'g Mem.

4

[doc. #72] at 5. The von Hofes raised their three children (two sons and a daughter)[6] in that home, a modest ranch-style house situated on a relatively small, wooded lot in a residential area of Branford, Connecticut, a suburban community located outside of New Haven. Before December 2001, Mr. von Hofe had worked as a teacher in the Branford public school system in an alternative program for "at risk" kids and Mrs. von Hofe had worked for over twenty years as a nurse in a local hospital. The von Hofes own the Property jointly – that is, title to the fee simple estate is vested in the names of both Mr. and Mrs. von Hofe. *See* Exhibit 1 Attached to Claimants' Motion to Supplement the Record [docs. #73 & #75]. Currently, there is no mortgage on the Property. The von Hofes were able to pay off their mortgage through a combination of their own earnings and gifts from Mr. von Hofe's parents. At the evidentiary hearing, the von Hofes testified that the value of the Property had recently been appraised at $248,000. The Government does not dispute that figure.

The Government's evidence at trial showed that beginning in approximately December 2000, Harold von Hofe began to grow marijuana in two relatively small areas located in the basement of the von Hofe home. The plants were located behind a curtain under the stairs leading to the basement and in another curtained area behind a furnace oil tank.[7] At the post-trial hearing, Mr. von Hofe testified that he had been using drugs – and in particular marijuana – since the 1960s and smoked marijuana daily. There was also evidence that Mr. von Hofe used other

---

[6] The von Hofe's daughter was away at college during the events in question and had nothing to do with the unlawful conduct on the Property.

[7] In addition to other evidence, the Government submitted electrical records for the von Hofe home showing a marked increase in electrical usage in the year preceding December 2001, and that electrical usage for the von Hofe home was much greater than electrical usage for that of other, comparably sized homes in the neighborhood. *See* Trial Ex. 4.

drugs, including Ketamine, a cat anesthetic, which Mr. von Hofe received from his sons and from time to time injected intramuscularly. The evidence at trial showed that both of the von Hofe sons used a variety of drugs and that at least one of them smoked marijuana. In 2001, the von Hofe's sons were approximately twenty-one and nineteen years old, respectively.

Acting on a tip, local police and DEA agents executed a search warrant at the Property on December 4, 2001. Several officers testified that when they entered the basement area of the Property to effectuate the search, they immediately smelled the distinctive odor of growing marijuana, which they testified was quite strong and obvious. Law enforcement officials seized sixty-five marijuana plants from the two grow areas; the plants were at various stages of growth from seedlings to fully grown plants. *See* Joint Stipulation of Law & Fact [doc. #56] at 2. The officers also seized the following: a jar partially filled with marijuana buds that was located on a desk in Mr. von Hofe's basement study; a digital scale (also found in the study) on which marijuana residue was found; marijuana growing equipment, including two lamps, potting soil and a substantial number of rock wool pots; a homemade drying compartment containing hanging strings with marijuana residue; two brown paper bags containing "shake," which is the discarded portion of marijuana plants; marijuana paraphernalia, including smoking pipes and seeds; three empty Ketamine bottles and several used syringes; and books on growing marijuana and selling drugs. *Id.* at 3. Law enforcement officials also discovered a compost area containing marijuana shake located just outside the von Hofes' garage, near where cars are parked in the driveway.

During the jury trial phase, several law enforcement agents who executed the warrant testified. They said that at the time of his arrest, Mr. von Hofe admitted the following: that the

marijuana grow belonged to him; that he had provided some of the marijuana that he grew to his friends and had also bartered the marijuana in return for work on his home; that he had sold marijuana on at least two occasions; that he provided one of his sons with access to the marijuana grow;[8] and that Mrs. von Hofe was aware of the marijuana grow but did not smoke marijuana herself.  Mr. von Hofe did not take the stand at the jury trial and, therefore, did not contradict the testimony of the law enforcement officers.

Mr. von Hofe did take the witness stand during the post-trial evidentiary hearing before the Court, at which time he admitted that he used the marijuana grow to supply his own daily use of marijuana, that he shared the marijuana he grew without charge with his friends and his son, that he and his friends smoked marijuana in his basement about once or twice a week, and that his sons were aware of the marijuana grow and had access to it.  Mr. von Hofe also admitted that he had traveled to Holland to obtain marijuana seeds, which he brought back to the United States and used for his growing operation.  However, Mr. von Hofe denied selling marijuana to anyone, denied that he had bartered marijuana for work on his home or that he had ever said so to law enforcement officers, and denied that his wife knew about the marijuana grow.

Anthony Huneycutt, a former friend of the von Hofe sons who is currently incarcerated (serving approximately a twenty-eight month term of imprisonment for possession of prescription medication not in their original container) testified that in or about 2001, the von Hofe sons were involved in substantial drug use and that he regularly used drugs with the von Hofe sons at the von Hofe home.  Mr. Huneycutt testified that he was aware of the existence of

---

[8] The testimony established that while both of the von Hofe sons used drugs, only one used marijuana.

Mr. von Hofe's marijuana grow and that he had supplied Ketamine to the von Hofe sons in return for marijuana that had been grown in the family home. Mr. Huneycutt also said that on at least one occasion he had purchased some of the marijuana that had been grown in the family home from one of the von Hofe sons; he said that he paid approximately $200 for half of an ounce of the marijuana and that the marijuana grown at the von Hofe home was of high quality.

Mrs. von Hofe testified during both the jury and non-jury phases of this proceeding. She acknowledged knowing that her husband and one of her sons used marijuana and that both of her sons had drug abuse problems that required treatment (which they ultimately obtained following the events of December 2001). However, she denied knowing of the existence of the marijuana grow in the basement of her home. She explained that she was the principal breadwinner in the family and worked long hours as a nurse. As a consequence, she was often not at home, and during the year that the marijuana grow was in operation, she had not gone into the oil tank area or looked behind the curtain hiding the marijuana that was growing under the stairs leading from the first floor to the basement. She conceded, however, that the stairs were just outside her bedroom door, which was located in the basement. DEA Special Agent John Rubenstein – who sat and spoke with Mrs. von Hofe during the execution of the search warrant – testified before the jury that in a discussion with Mrs. von Hofe in the kitchen area, she had identified the marijuana grow as belonging to her husband and one of her sons. However, both in her direct testimony and on cross examination at trial, Mrs. von Hofe denied ever telling Agent Rubenstein that she knew anything about her husband's marijuana grow. Furthermore, in her direct testimony and on cross examination at trial, Mrs. von Hofe denied knowing that anyone in the house was abusing Ketamine, and she sought to explain the presence of used syringes in the

8

house by claiming that she used them for the purpose of applying tick medication on her dogs and cats.

By the jury's extremely quick verdict rejecting Mrs. von Hofe's innocent owner defense (the jury deliberated for less than one hour before returning its verdict), it is apparent that the jury did not accept Mrs. von Hofe's claim that she was unaware of the marijuana growing in her home.[9]  The Court agrees with the jury that Mrs. von Hofe did not tell the truth when she denied knowing of the existence of the marijuana grow.  The Court does not doubt Mrs. von Hofe's testimony that she worked long hours as a nurse.  However, the location of one of the marijuana grows was too close to her bedroom door, the odor of growing marijuana plants in the house was too strong, the marijuana shake found both in the house and in the compost area was too voluminous and too obvious, the noise generated from the grow lights was too loud, and the Medley Lane home itself (particularly the basement area where Mrs. von Hofe's bedroom was located) was just too small for this Court to find Mrs. von Hofe's claim of lack of knowledge to be credible.  The Court also finds that Mrs. von Hofe did not tell the truth when she tried to

---

[9]  On the innocent owner defense, the Court charged the jury in pertinent part as follows:

> Lack of knowledge of the illegal activity.   Claimant Kathleen von Hofe can establish her innocent owner defense by proving by a preponderance of the evidence that she had no knowledge that the illegal narcotics activity that gave rise to forfeiture was taking place at the Defendant Property.  However, Claimant Kathleen von Hofe must also prove that she was not willfully blind to the alleged illegal conduct.  Someone is "willfully blind" to illegal conduct when he or she claims ignorance of the illegal activity, even though it occurs within his or her plain sight.  Furthermore, property owners must take basic investigatory steps and not deliberately avoid knowledge of wrongdoing occurring on their property.  Deliberate avoidance of positive knowledge of illegal activity is the equivalent of actual knowledge of the illegal activity.

Jury Instructions, Court's Ex. 4, at 22-23.

provide an innocent explanation for the empty syringes and Ketamine bottles found in her home. As a result, the Court finds as a fact that Mrs. von Hofe was fully aware that during the year preceding December 4, 2001, Mr. von Hofe was growing marijuana in the basement of the family home for his own use and for that of his sons and his friends.

That said, no witness or any evidence suggested that Mrs. von Hofe was in any way involved in the marijuana cultivation taking place at her home. And nothing suggests that Mrs. von Hofe smoked marijuana or used drugs of any kind. Furthermore, while there was evidence of the distribution of marijuana by Mr. von Hofe and his sons – evidence that this Court finds was credible – there was no evidence to suggest that Mrs. von Hofe herself ever distributed marijuana to anyone or that she was aware that either her sons or husband were selling or bartering the marijuana grown in her home. However, the Court finds from the evidence that Mrs. von Hofe was aware that her husband was sharing the marijuana he grew in the home with his friends and with his son.

No federal criminal charges were ever brought against either Mr. or Mrs. von Hofe. Instead, they were criminally charged in state court. Mr. von Hofe, who had no prior criminal record, was charged in state court with six counts of drug related offenses ranging from operation of a drug factory to possession of narcotics and sale of controlled substances. *See* Trial Ex. 7. In September 2003, Mr. von Hofe entered a plea of guilty under the *Alford* doctrine to Sale of a Controlled Substance in violation of Conn. Gen. Stat. § 21a-277(b). *See generally North Carolina v. Alford*, 400 U.S. 25 (1970). As recently stated by the Second Circuit,

> [a] defendant entering an *Alford* plea "voluntarily, knowingly, and
> understandingly consent[s] to the imposition of a prison sentence even [though]
> he is unwilling or unable to admit his participation in the acts constituting the

crime." Frequently analogized to a plea of nolo contendere, an *Alford* plea often asserts innocence whereas a nolo contendere plea refuses to admit guilt.

*Burrell v. United States*, 384 F.3d 22, 24 n.1 (2d Cir. 2004) (quoting *Alford*, 400 U.S. at 37). Mr. von Hofe received a three-year sentence, execution suspended and a one-year conditional discharge. *See* Trial Ex. 7. No fine was imposed. *See id.*

Mrs. von Hofe, who also had no prior criminal record, entered a plea in state court on September 2003, the same day as her husband entered his plea. *See id.* She pleaded guilty under the *Alford* doctrine to a single charge of possession of marijuana in violation of Conn. Gen. Stat. § 21a-279(c). Mrs. von Hofe received a nine-month sentence – execution suspended – and a one year conditional discharge. *See* Trial Ex. 7. No fine was imposed. *See id.* Mrs. von Hofe testified, without contradiction, that she entered the *Alford* plea to the possession charge because this was the only way she could ensure that state prosecutors would drop all criminal charges against her sons.

Shortly before the start of the jury phase of this forfeiture action, and in an effort to retain the family home, Mr. and Mrs. von Hofe filed an offer of judgment in which they offered to pay the Government in cash the full appraised value of the Property, $248,000, so long as they could keep their home. *See* Offer of Judgment dated January 28, 2005 [doc. #46]. The Government declined the von Hofes' offer, insisting instead on forfeiture of the von Hofe home.

## II.

### A.

The Eighth Amendment provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

11

In *United States v. Austin*, 509 U.S. 602 (1993), the Supreme Court held that the Excessive Fines

Clause of the Eighth Amendment "limits the government's power to extract payments, whether in

cash or in kind, 'as *punishment* for some offense.' "  *Id.* at 609-10 (emphasis in original) (quoting

*Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

After reviewing the history of civil forfeiture in English and American case law, the Supreme

Court concluded that *in rem* civil forfeiture under 21 U.S.C. § 881(a)(7) – the provision invoked

by the Government in this case – is properly understood as punishment and, as such, is subject to

the limitations of the Excessive Fines Clause.  *See Austin*, 509 U.S. at 621-22; *see also United

States v. Milbrand*, 58 F.3d 841, 845 (2d Cir. 1995).  However, the Supreme Court in *Austin*

declined to set forth the factors a court should consider in determining whether a forfeiture was

constitutionally excessive.

Five years later, the Supreme Court remedied this omission in *United States v.

Bajakajian*, 524 U.S. 321 (1998).  Though *Bajakajian* was an *in personam* criminal forfeiture

case, the Supreme Court's teachings apply equally to *in rem* civil forfeiture under 21 U.S.C. §

881(a)(7).  As the Court noted, "[b]ecause some recent federal forfeiture laws have blurred the

traditional distinction between civil *in rem* and criminal *in personam* forfeiture, . . . modern

statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in

part, regardless of whether the proceeding is styled *in rem* or *in personam*."  *Bajakajian*, 524 U.S.

at 332 n.6 (citing *Austin*, 509 U.S. at 621-22); *see also United States v. Collado*, 348 F.3d 323,

328 (2d Cir. 2003) (applying *Bajakajian* to an *in rem* civil forfeiture pursuant to 21 U.S.C. §

881(a)(7)).

Writing for the Supreme Court, Justice Clarence Thomas explained that the "touchstone

of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334.  Examining both the text and history of the Excessive Fines Clause, the Court went on to hold that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense." *Id.*  The Court explicitly "adopt[ed] the standard of gross disproportionality articulated in [its] Cruel and Unusual Punishments Clause precedents."  *Id.* at 336.

Applying that standard in *Bajakajian*, the Supreme Court held that the defendant's full forfeiture of $357,144 in cash violated the Excessive Fines Clause.  In that case, Mr. Bajakajian had pleaded guilty to willfully failing to report that he was transporting in excess of $10,000 outside the United States, after he was detained while attempting to board an airplane with $357,144 in cash.  Although acknowledging that "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise," the Supreme Court noted a number of factors that influenced its decision to hold the forfeiture unconstitutional: (1) Mr. Bajakajian's crime was a reporting offense only – that is, "failing to report the wholly legal act of transporting his currency"; (2) Mr. Bajakajian's offense was unrelated to any other illegal activities – that is, he owed no customs duties, he had earned the money legally and it was perfectly lawful for him to take his money out of the country to pay a lawful debt; (3) Mr. Bajakajian was not a money launderer, drug trafficker or tax evader – that is, the class of persons for whom the offense was principally designed; (4) under the Sentencing Guidelines, the maximum sentence that could have been imposed was six months and the maximum fine was $5,000 – thus "confirming a minimal level of culpability"; and (5) the harm that Mr. Bajakajian

13

would have caused had his crime not been detected was minor – that is, the Government "would have been deprived only of the information that $357,144 had left the country." *Id.* at 336-38. Since the forfeiture of $357,144 was "many orders of magnitude" greater than the maximum fine of $5,000 and bore "no articulable correlation to any injury suffered by the Government," the Supreme Court concluded that the forfeiture was grossly disproportional to the gravity of the offense to which Mr. Bajakajian had pleaded guilty. *Id.* at 340.

## B.

By enacting CAFRA in 2000, Congress resolved a number of issues that had generated differing approaches in the lower courts both before and after *Bajakajian*. *See* David B. Smith, 1 *Prosecution and Defense of Forfeiture Cases* § 12.11[2] (2004); *see generally* Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97 (2001) (providing an overview of changes effected by CAFRA).

First, as discussed in the Court's earlier decision, CAFRA clarified that the issue of constitutional excessiveness should be tried to the court, without a jury. *See* 18 U.S.C. § 983(g)(3) (excessiveness will be determined "at a hearing conducted by the court without a jury"); Ruling and Order [doc. #59] at 2-3; *see also 32 Medley Lane*, 2005 WL 465421, at *1. However, one issue this Court did not expressly address in its earlier ruling in this case was whether despite CAFRA, the Supreme Court's decisions in *United States v. Booker*, 125 S. Ct. 738 (2005), *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), require a jury to decide the issue of constitutional excessiveness.

The Court concludes that none of these Supreme Court decisions requires a jury to

determine the issue of constitutional excessiveness.   As the Second Circuit recently explained, the *Booker-Blakely-Apprendi* line of cases "requires that every fact that *increases* a penalty beyond a statutory maximum must be proven to a jury beyond a reasonable doubt." *United States v. Sharpley*, 399 F.3d 123, 125 (2d Cir. 2005) (emphasis added).   At this point, the only question for the Court is whether to reduce or eliminate, not increase, the forfeiture already awarded by the jury.   Moreover, "the [*Blakely*] rule applies only to facts."   *Id.*   Yet, as previously discussed in this Court's Ruling and Order [doc. #59] at 2-3, *32 Medley Lane*, 2005 WL 465421, at *1, the issue of excessiveness – at least in this case – is principally, if not exclusively, one of law.  *See, e.g.*, *United States v. Toyfoya*, No. CR-93-0505 EFL, 1994 WL 477173, at *5 (N.D. Cal. Aug. 29, 1994) ("In the Court's opinion, the Court should make the determination of whether the forfeiture is excessive under the Eighth Amendment, not the jury."); *United States v. 24124 Lemay Street*, 857 F. Supp. 1373, 1376 (C.D. Cal. 1994) ("[T]he determination of whether a civil forfeiture violates the Excessive Fines Clause of the Eighth Amendment is a question of law suitable for determination by the Court.").  *See also McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application.") (quoted in *Guzman v. United States*, 404 F.3d 139, 143 (2nd Cir. 2005)); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) (After *Booker* "the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.").   Finally, other courts that have considered this issue have consistently held that the *Booker-Blakely-Apprendi* line of decisions does not apply to forfeiture

15

proceedings. *See, e.g.*, *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) (holding that because there is no statutory maximum forfeiture, *Apprendi* and *Booker* do not alter the conclusion that the Sixth Amendment does not apply to forfeitures); *United States v. Swanson*, 394 F.3d 520, 526 (7th Cir. 2005) ("[F]orfeiture and restitution orders do not come within *Apprendi*'s rule, because there is no prescribed statutory maximum and no risk that the defendant has been convicted de facto of a more serious offense.") (internal quotations omitted); *United States v. Keene*, 341 F.3d 78, 85 (1st Cir. 2003) (recognizing that "other circuits have consistently refused to apply *Apprendi* requirements to criminal forfeitures"). *See also United States v. Hall*, No. 04-5047, slip op. at 7-8 (6th Cir. May 6, 2005) (unpublished opinion) (rejecting attempt to extend *Apprendi* and *Booker* to criminal forfeitures).

Second, CAFRA also makes clear that it is the claimant who has the burden of demonstrating that forfeiture is constitutionally excessive, and the claimant must do so by a preponderance of the evidence. It is not the Government's burden to establish that forfeiture is constitutional, and the reasonable doubt standard is inapplicable. *See* 18 U.S.C. § 983(g)(3) ("The claimant shall have the burden of establishing . . . by a preponderance of the evidence.").

Third, CAFRA adopted for all *in rem* civil forfeitures the "grossly disproportional" standard for excessiveness that was articulated by the Supreme Court in *Bajakajian*. *Compare Bajakajian*, 524 U.S. at 334 ("We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is *grossly disproportional* to the gravity of a defendant's offense.") (emphasis added); *with* 18 U.S.C. § 983(g)(4) ("If the court finds that the forfeiture is *grossly disproportional* to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.") (emphasis added).

16

Thus, CAFRA requires a court to determine whether the forfeiture is "grossly disproportional" by comparing "the forfeiture to the gravity of the offense giving rise to the forfeiture."  18 U.S.C. §§ 983(g)(2) & (3).

Fourth, CAFRA clarifies that if a court determines that a forfeiture "is grossly disproportional to the offense it shall *reduce or eliminate* the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution."  18 U.S.C. § 983(g)(4) (emphasis added).  In *Bajakajian*, the Supreme Court addressed only the issue of full forfeiture and declined to consider the propriety of the district court's reduction of the forfeiture to $15,000.  *Bajakajian*, 524 U.S. at 338 n.11.  In the period before enactment of CAFRA, courts had divided on the issue of whether they had authority to reduce (as opposed to completely eliminate) a forfeiture to satisfy the Eighth Amendment.  *Compare United States v. 461 Shelby County Road*, 857 F. Supp. 935, 939 (N.D. Ala. 1994) ("While this court acknowledges its responsibility to discriminate between 'excessive' and 'non-excessive' fines, it does not acknowledge that it, or any other court, is capable of declaring and implementing a partial forfeiture in order to prevent the punishment from being too severe, namely, being out of proportion to the criminal conduct."); *United States v. 6625 Zumirez Drive*, 845 F. Supp. 725, 736-37 (C.D. Cal. 1994) ("In forfeiture cases, the legal fiction upon which forfeiture is based makes the Defendant Property subject only to complete forfeiture. No intermediate position exists."); *United States v. 835 Seventh Street Rensselaer*, 820 F. Supp. 688, 696 (N.D.N.Y. 1993) ("The decision is made more difficult because there exists no intermediate position. The legal fiction upon which forfeiture is based makes the property, the defendant, subject only to complete forfeiture. The court is powerless to fashion a just remedy which in this case lies

17

somewhere between the punitive effects of forfeiture and the unwarranted event of outright dismissal."); *with United States v. Bajakajian*, 84 F.3d 334, 340 (9th Cir. 1996) (Wallace, J., concurring in judgment) (affirming lower court decision that found that the entire amount of currency was potentially forfeitable, then reduced the amount forfeited to a level proportional with culpability in order to conform with the Eighth Amendment), *aff'd on other grounds by* 524 U.S. 321 (1998); *United States v. Sarbello*, 985 F.2d 716, 717-18 (3d Cir. 1993) (holding that a court may "reduce an otherwise mandatory 100% statutory criminal forfeiture . . . in order to conform to the eighth amendment").  In enacting CAFRA, Congress expressly allowed courts to choose something less than full forfeiture in appropriate cases.

## C.

The Second Circuit has not yet had occasion in a post-CAFRA case to set forth the factors that a district court should consider in deciding constitutional excessiveness.  In *United States v. Milbrand*, *supra*, the Second Circuit had adopted an elaborate multi-factor test for determining excessiveness that combined principles of proportionality (that is, the gravity of the offense compared to severity of the penalty) and instrumentality (that is, the role of the property in the offense).  *See Milbrand*, 58 F.3d at 847-48.  After *Bajakajian*, and particularly after enactment of CAFRA, the instrumentality factors of *Milbrand* have, in large measure, been removed from the excessiveness analysis.  CAFRA essentially placed the instrumentality factors into the initial jury trial portion of a civil forfeiture proceeding, during which the Government must now prove to the satisfaction of a jury that there is a substantial connection between the property at issue and the crime involved.  *See* 18 U.S.C. § 983(c)(3); *see also United States v. 45 Claremont Street*, 395 F.3d 1, 5 n.5 (1st Cir. 2004) ("After CAFRA . . . once the government has

18

met its burden [under 18 U.S.C. § 983(c)(3)], the instrumentality test is satisfied.").

More recently, in *United States v. Collado*, *supra* – a case filed before the effective date of CAFRA – the Second Circuit suggested that when evaluating gross disproportionality, a court should look to the factors that the Supreme Court considered in deciding the issue of excessiveness in *Bajakajian*. *See Collado*, 348 F.3d at 328. As the Second Circuit duly noted, among those factors are:

> (a) "the essence of the crime" of the respondent and its relation to other criminal activity, (b) whether the respondent fit into the class of persons for whom the statute was principally designed (c) the maximum sentence and fine that could have been imposed, and (d) the nature of the harm caused by the respondent's conduct.

*Id.* (citing *Bajakajian*, 524 U.S. at 337-39); *see, e.g.*, *45 Claremont Street*, 395 F.3d at 6 (in evaluating proportionality, courts should look to: "whether the offense is related to other illegal activities; (2) the potential penalties for the offense; and (3) the harm caused by the offense") (citing *Bajakajian*, 524 U.S. at 337-40). Therefore, though it is a pre-CAFRA case, *Collado* appears to set forth the proper framework for the Court's analysis of excessiveness in this case.

## III.

Because Mr. and Mrs. von Hofe are each owners of the Property and have each petitioned to set aside or reduce the forfeiture of his or her respective interest in the Property, the Court will consider each Claimant separately. However, before beginning the analysis, it is important to note at the outset that the gross disproportionality principle, which as stated above derives from the Supreme Court's Cruel and Unusual Punishment Clause precedents, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also Rummel v. Estelle*, 445 U.S. 263, 271 (1980) ("Outside the context of capital punishment,

successful challenges to the proportionality of particular sentences have been exceedingly rare."). According to *Bajakajian*, "[e]xcessive means surpassing the usual, the proper, or a normal measure of proportion." 524 U.S. at 335. Thus, the Excessive Fines Clause creates a very high standard under which most punitive fines are constitutional.

### A.

Turning first to Mr. von Hofe, the Court has little difficulty concluding that forfeiture of his interest in the Property is not grossly disproportional to the offense giving rise to forfeiture.

1.    The Nature of the Offense.

There is little question that Mr. von Hofe was centrally involved in the illegal growing, use *and* distribution of marijuana for approximately a year. Indeed, Mr. von Hofe himself admitted that he had been growing (i.e., manufacturing) marijuana in his home for approximately a year before his arrest and that he regularly provided (i.e., distributed or dispensed) that marijuana to his son, his friends, and his son's friends for their use. *See* 21 U.S.C. § 841(a) (making it illegal to "manufacture, distribute or dispense" or possess with intent to manufacture, distribute or dispense marijuana). Furthermore, although at the evidentiary hearing Mr. von Hofe denied bartering or selling marijuana, the Court finds it notable that he gave no such denials during the jury phase of the case. On this issue, therefore, the Court credits the testimony of the law enforcement officials, who testified without contradiction during the jury phase of this case that Mr. von Hofe admitted to them that he had bartered the marijuana he grew in his home for landscaping and roofing work on the Property and that he had sold marijuana on occasion. By all accounts the marijuana Mr. von Hofe grew was of a high-grade and highly potent. The evidence also showed that Mr. von Hofe's marijuana was used to obtain Ketamine from Mr. Huneycutt and

that Mr. von Hofe was involved in the illegal use of Ketamine. Finally, in state court, Mr. von Hofe pleaded guilty, albeit under the *Alford* doctrine, to sale of a controlled substance.

That said, as Mr. von Hofe points out, his was not a large marijuana grow operation. As DEA Agent Rubinstein acknowledged at the evidentiary hearing, compared to other marijuana grow operations, Mr. von Hofe's was a minor operation.[10]  Also, while law enforcement officers seized a digital scale bearing marijuana residue, which is suggestive of distribution activities, the officers did not find any glassine bags for bagging saleable portions of marijuana, any cash of any kind, or any firearms, which Agent Rubinstein admitted are the usual tools of the drug trade.[11] As the Court assesses the evidence, it appears that Mr. von Hofe grew the marijuana principally for his own use and that of his son and his friends. To the extent he profited from occasionally selling or bartering his home-grown marijuana, during the year that his grow operation was in existence, Mr. von Hofe's economic gains do not appear to have been very substantial.

Nonetheless, manufacturing and distributing controlled substances such as marijuana are serious offenses. They are not remotely analogous to the relatively harmless reporting offense involved in *Bajakajian*.  Furthermore, Mr. von Hofe's manufacturing and distribution of

---

[10] The Court notes, in passing, that the Government, by its own actions, confirms that this was a minor operation, because it could have prosecuted the von Hofes in 2001 under federal drug laws. Yet, at that time, the Government apparently made a decision that prosecuting the von Hofes under federal law was not an appropriate use of their limited time and resources.

[11]  During the evidentiary hearing before the Court, Agent Rubinstein was permitted to relate hearsay statements from some neighbors about cars lining up in front of the von Hofe home in the evening, suggesting that buyers were coming looking for drugs. However, there was no evidence of any significant drug sales, and given the evidence the Government did present to the jury (regarding Ketamine and Mr. Huneycutt), the Court assumes that if the Government had evidence of drug sales, it would have produced it at trial. A more likely explanation for the cars arriving at the von Hofe home in the evening was the fact that their two sons had a lively social life and the von Hofe home appears to have been a meeting place for their sons' friends.

marijuana also involved other illegal activities.  He admitted transporting marijuana seeds into the United States from Holland and abusing Ketamine, which the Court finds was purchased with marijuana grown in the von Hofe home.

2.    The Persons for Whom the Statute was Designed.

Importantly, Mr. von Hofe fits precisely into the class of persons for whom Congress enacted the laws in question.  *See, e.g.*, *United States v. Shields*, 87 F.3d 1194, 1197 (11th Cir. 1996) (case involving a federal criminal prosecution under 21 U.S.C. §§ 841 & 846 for manufacture and conspiracy to manufacture marijuana cultivated and harvested in a basement); *United States v. Bovee*, 291 F. Supp. 2d 557, 559 (E.D. Mich. 2003) (same); *United States v. Smith*, 920 F. Supp. 245, 246, 249 (D. Me. 1996) (same); *see also United States v. Wegner*, 46 F.3d 924, 928 (9th Cir. 1995) (same under 21 U.S.C. § 841 only).  Thus, this is not a situation like *Bajakajian*, where an individual is ensnared by an offense that is principally intended to apply to others.

As explained by the Supreme Court in *Austin*, "[w]hen it added subsection (a)(7) to § 881 in 1984, Congress recognized 'that the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs.'  It characterized the forfeiture of real property as 'a powerful deterrent.' "  *Austin*, 509 U.S. at 620 (footnote omitted) (quoting S. Rep. No. 98-225, at 191 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3374).  *See also Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("[F]orfeiture also serves a deterrent purpose distinct from any punitive purpose. Forfeiture of property prevents illegal uses 'both by preventing further illicit use of the [property] and by imposing an economic penalty, thereby rendering illegal behavior unprofitable.' ") (quoting *Calero-Toledo v. Pearson Yacht*

*Leasing Co.*, 416 U.S. 663, 687 (1974)). Thus, Congress has determined that civil forfeiture under 21 U.S.C. § 881(a)(7) is an appropriate sanction to assist law enforcement authorities in their efforts to deter unlawful drug activity by punishing those, like Mr. von Hofe, who illegally use their property to commit drug offenses.

3.    <u>The Nature of the Harm.</u>

Furthermore, unlike the situation in *Bajakajian*, the harm to the community from Mr. von Hofe's drug offense is substantial. *See, e.g.*, *United States v. 38 Whalers Cove Drive*, 954 F.2d 29, 38-39 (2d Cir. 1992) ("The Supreme Court has recognized the serious threat to individuals and society posed by drug offenses in the context of an Eighth Amendment analysis.") (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)). Drugs and the drug trade – and especially the violence and devastation they inevitably bring – represent a significant scourge on our communities. *See, e.g.*, *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 668 (1989) (drug use and distribution one of "greatest problems affecting the health and welfare of our population"); *United States v. 141st Street Corp. by Hersh*, 911 F.2d 870, 879 (2d Cir. 1990) ("The illicit sale and use of drugs is taking an ever increasing toll on our nation. These activities affect almost every aspect of modern existence . . ."). Mr. von Hofe and his sons were not the only ones harmed by his actions. We are all injured when members of our community set up drug manufacturing and distribution operations within our neighborhoods.

4.    <u>The Maximum Penalties Available.</u>

*Bajakajian* and *Collado* also require the Court to consider the forfeiture in relationship to the maximum sentence and fine that could be imposed for such an offense. The Government argues that in assessing this factor, the Court must focus primarily on the maximum fines

provided by statute, because any penalty that is less than the statutory maximum must, by definition, satisfy the grossly disproportional test. *See* Gov't Post-Hr'g Mem. [doc. #71] at 12-14. The manufacture of sixty-five marijuana plants in violation of 21 U.S.C. § 841(a) corresponds to a violation of 21 U.S.C. § 841(b)(1)(C), for which the statutory maximum penalties are imprisonment for up to twenty years and a $1,000,000 fine. As argued by the Government, a maximum fine of $1,000,000 is considerably higher than the $248,000 total value of the Property, not to mention the value of Mr. von Hofe's one-half interest in the Property. *See* Gov't Post-Hr'g Mem. [doc. #71] at 13-14.

Equally emphatically, Claimants ask the Court to focus on the sentence Mr. von Hofe received in state court for the offense to which he pleaded guilty, as well as on the sentencing ranges under the now-advisory United States Sentencing Guidelines. *See* Claimants' Post-Hr'g Mem. [doc. #72] at 2-3; *see also Booker*, 125 S .Ct. at 757 ("The . . . approach, which we now adopt, would . . . make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct."); *Crosby*, 397 F.3d at 113 ("the Guidelines are no longer mandatory"). As recited above, Mr. von Hofe received a suspended sentence in state court and no fine whatsoever. The crime to which he pleaded guilty in state court – a violation of § 21a-277(b) of the Connecticut General Statutes – carries a maximum fine of $25,000 and maximum sentence of seven years imprisonment for a first time offense. *See* Conn. Gen. Stat. § 21a-277(b); Claimants' Post-Hr'g Mem. [doc. #72] at 2-3.

The Government and Claimants generally agree that the Sentencing Guidelines provide for a fine of $40,000 and a term of imprisonment ranging from fifteen to twenty-one months for a person, like Mr. von Hofe, who has no criminal record and who is convicted of growing sixty-

five marijuana plants in his basement.[12]  Though the Government is apparently willing to assume that Mr. von Hofe would be eligible for certain downward adjustments to his offense level, this sort of fine tuning of Mr. von Hofe's hypothetical federal sentence is neither particularly relevant nor appropriate, because the Court's task in this proceeding is to assess the "*maximum* sentence and fine that could have been imposed." *Collado*, 348 F.3d at 328 (emphasis added).  *Cf. 835 Seventh Street Rensselaer*, 820 F. Supp. at 694 ("Of course, the computation of the actual sentence which would have been imposed under the Guidelines is inherently suspect because the court can never ascertain whether an adjustment for acceptance of responsibility is appropriate (because no actual crime was charged).").  Of more significance is the fact that the Sentencing Guidelines provide that because the statute involved in this case authorizes a maximum fine greater than $250,000, the maximum fine provided by the Sentencing Guidelines does not apply and the statutory maximum fine – in this case $1,000,000 – applies instead.  *See* U.S.S.G. § 5E1.2(c)(4).

---

[12] All Guidelines calculations in this Memorandum of Decision will be performed using the November 1, 2004 Federal Sentencing Guidelines, though the Court notes that the resulting maximum fines and sentencing ranges are the same whether the November 1, 2001 or November 1, 2004 Sentencing Guidelines are used.  According to U.S.S.G. § 2D1.1, Commentary, Background, a marijuana plant – regardless of its size or stage of development so long as it has readily observable root formation, see *id.* at note 17 – is the equivalent of 100 grams of marijuana.  Therefore, the sixty-five plants found in the von Hofe home, at 100 grams per plant, would be considered 6,500 grams, or 6.5 kilograms of marijuana.  The 6.5 kilograms of marijuana in the von Hofe Home translates to a base offense level of fourteen according to the Drug Quantity Table found in U.S.S.G. § 2D1.1(c)(13).  Because Mr. von Hofe has no criminal record, he would be assessed no criminal history points pursuant to U.S.S.G. § 4A1.1, and thus would have a criminal history category of one according to the sentencing table found in U.S.S.G. § 5A.  A defendant with a criminal history category of one and a total offense level of fourteen would face a fine of between $4,000 to $40,000 and a term of imprisonment ranging from fifteen to twenty-one months.  *See* U.S.S.G. §§ 5A & 5E1.2(b)(3); *see also* Claimants' Post-Hr'g Mem. [doc. #72] at 2-3.

The Court is aware that various courts have reached differing views on the issue of whether the statutory maximums or the Guidelines ranges are the appropriate point of comparison for assessing the proportionality of a forfeiture. Some courts look solely to the statutory maximum and conclude that a forfeiture cannot be constitutionally excessive where it is less than the maximum fine allowed by statute. *See, e.g.*, *45 Claremont Street*, 395 F.3d at 6 (forfeiture of a $200,000 house not excessive compared to the statutory maximum of up to life imprisonment and $4,000,000 fine); *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001) (forfeiture of a $750,000 parcel of property was not excessive because claimants were each subject to a statutory maximum fine of up to $4,000,000), *reinstated on reh'g en banc by United States v. Diaz*, 296 F.3d 680 (8th Cir. 2002); *United States v. Hill*, 167 F.3d 1055, 1072-73 (6th Cir. 1999) ("This Court has . . . held that there is no constitutional violation when the forfeiture does not exceed the maximum fine allowed by statute."); *United States v. Bieri*, 68 F.3d 232, 238 (8th Cir. 1995) ("In our view, it cannot be excessive in a constitutional sense to take tainted property from criminals when that property . . . is worth far less than the legislatively authorized statutory fines."). *See also United States v. 415 East Mitchell Avenue*, 149 F.3d 472, 477 (6th Cir. 1998) (only comparing value of property to potential maximum statutory fine were the Claimant to have been prosecuted under federal law); *United States v. 829 Calle de Madero*, 100 F.3d 734, 739 (10th Cir. 1996) (same). In fact, some courts hold that if the value of the forfeited property falls below a statutory maximum, that creates a presumption that the forfeiture is not excessive. *See, e.g.*, *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1309 (11th Cir. 1999) ("[I]f the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."); *United States v. Riedl*, 164 F. Supp. 2d

26

1196, 1199 (D. Haw. 2003) (same) (citing *817 N.E. 29th Drive*, 175 F.3d at 1309).

Other courts focus solely or principally on the applicable Guidelines range, instead of the statutory maximums, and often, in doing so, find that a forfeiture is unconstitutional. *See, e.g.*, *United States v. 3814 N.W. Thurman Street*, 164 F.3d 1191, 1197 & n.3 (9th Cir. 1999) (primarily focusing on the maximum fine under the Sentencing Guidelines fine table, even after recognizing that when the statutory maximum fine is greater than $250,000, the statutory maximum – not the guidelines maximum – would apply); *United States v. 25 Sandra Court*, 135 F.3d 462, 466 n.4 (7th Cir. 1998) (focusing solely on the fines in the Sentencing Guidelines fine table, without reference to any applicable statutory maximums); *United States v. $293,316 in U.S. Currency*, 349 F. Supp. 2d 638, 650-51 (E.D.N.Y. 2004) (same). *But see United States v. 427 & 429 Hall Street*, 74 F.3d 1165, 1172-73 (11th Cir. 1996) (focusing solely on the fines in the Sentencing Guidelines fine table, without reference to any applicable statutory maximums, but finding that the forfeiture at issue was not unconstitutionally excessive).

*Bajakajian* teaches that the Government's position (that the statutory maximums are the only relevant factor) and Claimants' position (that the Sentencing Guidelines are the sole touchstones of proportionality) are both wrong. For, in assessing the proportionality of the forfeiture in *Bajakajian*, the Supreme Court (contrary to the Government's argument in this case) focused on the manner in which the relevant crime is treated in the Sentencing Guidelines. *See United States v. Carpenter*, 317 F.3d 618, 627 (6th Cir. 2003) (in *Bajakajian* the Supreme Court rejected the Government's "oversimplified approach" of just considering the statutory maximums), *reinstated in part on reh'g en banc by* 360 F.3d 591 (6th Cir. 2004). In the text of its opinion, the Supreme Court emphasized that "under the Sentencing Guidelines, the maximum

sentence that could have been imposed on respondent was six months, while the maximum fine was $5,000." *Bajakajian*, 524 U.S. at 338. This, the Supreme Court said, confirmed "a minimal level of culpability." *Id.*

However, the Supreme Court did not ignore the statutory maximums (contrary to the Claimant's position), for in a footnote, the Court stated that "[i]n considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence." *Id.* at 339 n.14. In *Bajakajian*, the Supreme Court observed that Congress had authorized a maximum fine of $250,000 plus five years' imprisonment, which, the Court noted, suggested that Congress "did not view the reporting offense as a trivial one." *Id.* Nonetheless, the Supreme Court explained, any argument in that case based upon the statutory maximum was undercut by the fact that under the Guidelines "respondent's culpability relative to other potential violators of the reporting provision . . . is small indeed." *Id.*

Accordingly, this Court concludes that in assessing excessiveness, it should consider both the statutory maximums and the relevant Sentencing Guidelines ranges. *See, e.g.*, *Carpenter*, 317 F.3d at 628 (considering both the statutory maximums and Sentencing Guidelines, according to the guidance of *Bajakajian*); *United States v. Ahmad*, 213 F.3d 805, 817 (4th Cir. 2000) (same); *817 N.E. 29th Drive*, 175 F.3d at 1309-11 (same); *United States v. 300 Blue Heron Farm Lane*, 115 F. Supp. 2d 525, 528 (D. Md. 2000) (same). *See also 835 Seventh Street Rensselaer*, 820 F. Supp. at 694 ("[T]he court shall apply the possibility of high monetary sanctions under 21 U.S.C. § 841 as one of the many factors it will consider, along with the penalty under the Guidelines, to determine proportionality.").

The statutory maximums are certainly relevant to this analysis as they suggest how

seriously Congress viewed the offense involved.  *See Bajakajian*, 524 U.S. at 336 ("judgments about the appropriate punishment for an offense belong in the first instance to the legislature"); *see also Solem v. Helm*, 463 U.S. 277, 290 (1983) (courts should "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes").  On the other hand, when Congress legislates a punishment, it does so for a wide range of perpetrators, and not all defendants are similarly culpable.

By contrast, the Guidelines are designed to provide a more tailored assessment of an individual defendant's culpability.  *See, e.g.*, *817 N.E. 29th Drive*, 175 F.3d at 1310 (Sentencing Guidelines "are designed to proportion punishments to crimes with even greater precision than criminal legislation").  However, any assessment of a civil *in rem* forfeiture based upon the Sentencing Guidelines is complex and inherently imprecise when, as here, the claimant has never been charged in federal court with a crime.  *See United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1100-01 (10th Cir. 2002) (stating that there may be "significant distinctions" between criminal forfeiture, such as the one at issue in *Bajakajian* where "the property owner was charged with one specific federal crime," and civil forfeiture, where neither the claimant nor the person engaging in illegal activities on the property was charged with a federal offense).[13]

---

[13] Indeed, the four post-CAFRA district court opinions from around the country that have decided whether a civil forfeiture was excessive each involved claimants who had been convicted of the underlying federal offense that gave rise to the forfeiture.  *See United States v. $293,316 in U.S. Currency*, 349 F. Supp. 2d 638, 640 (E.D.N.Y. 2004); *United States v. One 1998 Tractor*, 288 F. Supp. 2d 710, 715 (W.D. Va. 2003), *aff'd United States v. Shimshiryan*, 117 Fed. Appx. 863, 2004 WL 2800938 (4th Cir. Dec. 7, 2004) (unpublished opinion); *United States v. Parcel 03179-005R*, 287 F. Supp. 2d 45, 52 (D.D.C. 2003); *United States v. Six Negotiable Checks Totaling $191,671.69*, 207 F. Supp. 2d 677, 682 (E.D. Mich. 2002).  However, it is not always the case that claimants are charged in federal court with the crimes for which forfeiture is sought. *See, e.g.*, *45 Claremont Street*, 395 F.3d at 2-3; *Collado*, 348 F.3d at 325; *Wagoner County Real Estate*, 278 F.3d at 1100-01.

Because Mr. von Hofe was only prosecuted under state law, the Court recognizes that "it is impossible . . . to account for all of the variables that would have been involved in any federal prosecution of the claimant[] for [his] marijuana growing." *25 Sandra Court*, 135 F.3d at 466 n.4. In short, the Court is not sentencing Mr. von Hofe – it is merely exploring the potential "maximum sentence[s] and fine[s] that could have been imposed." *Collado*, 348 F.3d at 328.

More importantly, the test under the Excessive Fines Clause is not whether the forfeiture is directly proportional to the sentence a particular defendant or claimant would receive for the offense committed, but rather whether forfeiture is *grossly* disproportional in the circumstances of the case. *Cf. Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."). As stated above, the gross disproportionality principle "reserves a constitutional violation for only the extraordinary case," *Lockyer*, 538 U.S. at 77, and successful gross disproportionality challenges are "exceedingly rare." *Rummel*, 445 U.S. at 271. Therefore, the mere fact that the value of property forfeited may exceed, even considerably, the fine range provided by the Sentencing Guidelines does not necessarily mean that the forfeiture is *grossly* disproportional. *See Bajakajian*, 524 U.S. at 335 ("Excessive means surpassing the usual, the proper, or a normal measure of proportion."). In short, no mathematical formula will substitute for a careful assessment of all facts and factors and the application of sound judgment to what all must acknowledge is an "inherently imprecise" task. *See Bajakajian*, 524 U.S. at 336; *cf. Solem*, 463 U.S. at 291 n.17 ("[N]o single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment.").

   5.     Conclusion.

   In evaluating all of the facts and factors above, the Court concludes that Mr. von Hofe's

was a serious offense involving significant harm to the community, an offense that both the

Congress and the Sentencing Commission view very seriously – in fact, so seriously that both

institutions provide for a maximum fine of $1,000,000 for the offense.  In these circumstances,

the Court cannot conclude that forfeiture of Mr. von Hofe's interest in his home – the monetary

equivalent of a fine of $124,000 (representing the value of Mr. von Hofe's one-half interest in the

Property) – is *grossly* disproportional to the gravity of his offense of growing and distributing not

insubstantial quantities of marijuana over a period of one year.  *Cf. 415 East Mitchell Avenue*,

149 F.3d at 478 (forfeiture of house valued at $220,000 in which marijuana had been grown in

the basement, where defendant was indicted on state charges and received a one-year suspended

sentence and two years probation, maximum state fines were $8,000, and maximum federal

statutory fines were $250,000 was not excessive because there was "no gross disproportion

between the value of the property and the gravity of the offense," according to *Bajakajian*).

   The Court is acutely aware that paying a fine of $124,000 is quite a different matter than

forfeiting an interest in the home in which one raised a family.  The Court fully realizes that the

forfeiture of the von Hofe home will have a profound impact on the entire family.  *See, e.g.*, *45

Claremont Street*, 395 F.3d at 6 ("Here, the harshness of the forfeiture is significant. [The

Claimant] lives at the property . . . with her four young children. . . "); *829 Calle de Madero*, 100

F.3d at 739 ("In evaluating the harshness of the sanction, we recognize that this forfeiture will

displace the Claimants' three minor children from their family home . . . "); *835 Seventh Street

Rensselaer*, 820 F. Supp. at 697 n.9 ("[I]t is impossible to decide the instant matter without

31

contemplating the effect which the forfeiture will have on the four children in the [Claimant's] family. . . . ").  Nevertheless, in enacting 21 U.S.C. § 881(a)(7) Congress concluded that when real property is used to facilitate the manufacture or distribution of drugs, forfeiture – even of a family home – is appropriate, and this Court cannot say that in the circumstances of this case, the Constitution forbids that result.  Accordingly, the Court will not set aside and will not reduce the jury's verdict that Mr. von Hofe must forfeit his entire interest in the Property.

## B.

Mrs. von Hofe's claim of excessiveness presents a much more difficult issue and a closer case than her husband's.

### 1.    The Nature of the Offense.

It is true that Mrs. von Hofe knowingly allowed her husband and son to use the family home to grow marijuana, a controlled substance, and that she was aware that her husband, her son, and her husband's friends smoked that home-grown marijuana in her house.  She thus knowingly countenanced and allowed the illegal manufacture and distribution of a controlled substance to take place in her home.  As the jury found, and this Court agrees, Mrs. von Hofe was not an innocent owner.  Thus, unlike Mr. Bajakajian, who merely failed to report a perfectly legal transaction, Mrs. von Hofe not only did not report an *illegal* transaction, but she also knowingly permitted her home to be used to facilitate numerous illegal transactions – growing, dispensing and using marijuana for a year.

On the other hand, Mrs. von Hofe is considerably less culpable than her husband.  There is no claim that Mrs. von Hofe was involved in setting up or cultivating the marijuana grow or in encouraging her husband to do so.  And there is no evidence that Mrs. von Hofe ever used any of

the marijuana grown in her home (or any drugs at all) or that she was even aware that her husband occasionally sold or bartered it. Mrs. von Hofe's case is therefore different from many of the reported cases where a property owner was actively involved with illegal drug sales taking place on the property. *See, e.g.*, *45 Claremont Street*, 395 F.3d at 6 ("Here, the harshness of the forfeiture is . . . outweighed by [the Claimant's] culpability . . . . [The Claimant] was not an innocent owner. The evidence at trial showed that she was directly involved in the February 9 transaction, as well as several other drug transactions . . . ."); *Milbrand*, 58 F.3d at 848 ("[A]s to the role of [the Claimant], though she was not prosecuted for or convicted of any offense, the court's findings plainly indicated that she had a significant degree of culpability in the criminal use of the property."). Furthermore, unlike Mr. von Hofe, Mrs. von Hofe pleaded guilty in state court only to possession of marijuana, not its sale, and, as the Court has already reported, Mrs. von Hofe received no fine and only a nine-month suspended sentence.

2.    The Nature of the Harm and the Persons for Whom the Statute was Designed.

The Court will not repeat here what was said above regarding the nature of the harm caused by marijuana grow operations or the persons for whom Congress designed the forfeiture statute. *See* Part III.A.2 & Part III.A.3 *supra*. Suffice it to say that, as a owner of property who knowingly allowed it to be used for the purpose of growing, using and dispensing marijuana, Mrs. von Hofe's conduct caused significant harm to the community, see *Nat'l Treasury Employees Union*, 489 U.S. at 668; *38 Whalers Cove Drive*, 954 F.2d at 38-39; *141st Street Corp. by Hersh*, 911 F.2d at 879; and she fits within the class of persons for whom the forfeiture statute was designed. *See United States v. 418 57th Street*, 922 F.2d 129, 132 (2d Cir. 1990) (Through 21 U.S.C. § 881(a)(7), "Congress intentionally placed a significant burden upon

owners to remain accountable for the legitimate use of their property.") (quoted in *United States v. 143-147 East 23rd Street*, 77 F.3d 648, 657 (2d Cir. 1996)).

       3.    <u>The Maximum Penalties Available.</u>

       Focusing strictly on the offenses for which the jury found forfeiture appropriate – 21 U.S.C. §§ 841(a) & 846 – as previously noted, each carry maximum statutory penalties of imprisonment for up to twenty years and a $1,000,000 fine for the manufacture of sixty-five marijuana plants.  *See* 21 U.S.C. § 841(b)(1)(C).  Furthermore, had Mrs. von Hofe been charged in federal court with conspiracy to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, the controlled substance of marijuana, as the Government postulates, Mrs. von Hofe, who also has no criminal record, would face a term of imprisonment from fifteen to twenty-one months under the Sentencing Guidelines, just like her husband, and because the statute in questions authorizes a maximum fine greater than $250,000, she would face a maximum Sentencing Guidelines fine of $1,000,000 (rather than the $40,000 otherwise provided in the Guidelines).   *See* Part III.A.4 & note 12, *supra*; Gov't Post-Hr'g Mem. [doc. #71] at 14; U.S.S.G. § 5E1.2(c)(4).  Thus, looking solely at the statutory maximum and Sentencing Guidelines maximums for either the offenses that gave rise to forfeiture or a postulated conspiracy charge, a forfeiture of $124,000 interest in the Property would not be grossly disproportional to a fine of $1,000,000.

       Mrs. von Hofe concedes that she could have been indicted for conspiracy under 21 U.S.C. § 846, but she strongly suggests that her plea to possession in state court is the most appropriate basis from which to assess her culpability.  *See* Claimants' Post-Hr'g Mem. [doc. #72] at 2.  The offense to which she pleaded guilty under state law, Conn. Gen. Stat. § 21a-279(c), provides for a

maximum fine of $1,000 and imprisonment not to exceed one year on a first offense.  Mrs. von

Hofe further postulates that if prosecuted under 21 U.S.C. § 844(a) for the federal equivalent of

her state simple possession charge, she would have faced a statutory maximum sentence of one

year imprisonment and a minimum fine of $1,000.  *See* Claimants' Post-Hr'g Mem. [doc. #72] at

2.  And according to the Sentencing Guidelines, for a conviction under 21 U.S.C. § 844(a) for

unlawful possession of marijuana, Mrs. von Hofe would have faced a maximum fine of only

$5,000 and a term of imprisonment from zero to six months.[14]

It is not at all clear to the Court that when assessing proportionality under CAFRA it can

or should look, as both Mrs. von Hofe and the Government urges, to offenses that were not

presented to the jury and that were not, therefore, the offenses that the jury found gave rise to

forfeiture.  After all, CAFRA provides that "[i]n making this determination, the court shall

compare the forfeiture to the gravity of the *offense giving rise to the forfeiture*."  *See* 18 U.S.C.

§§ 983(g)(2) (emphasis added).  Moreover, the Court notes that in *United States v. 45 Claremont*

*Street*, *supra*, the only reported circuit court opinion analyzing excessiveness under CAFRA, the

First Circuit looked only to the offense which gave rise to forfeiture.  That case involved a three-

family house valued at $200,000, owned by a woman with four young children whose boyfriend

engaged in a large-scale cocaine transaction on the property.  *See 45 Claremont Street*, 395 F.3d

at 6.  Unlike her boyfriend, the homeowner had not been charged with the federal narcotics crime

---

[14]  According to U.S.S.G. § 2D2.1(a)(3), unlawful possession of a controlled substance such as marijuana has a base offense level of four.  Because Mrs. von Hofe has no criminal record, she would be assessed no criminal history points pursuant to U.S.S.G. § 4A1.1, and thus would have a criminal history category of one according to the sentencing table found in U.S.S.G. § 5A.  A defendant with a criminal history category of one and a total offense level of four would face a fine of between $250 to $5,000 and a term of imprisonment ranging from zero to six months.  *See* U.S.S.G. §§ 5A & 5E1.2(b)(3).

that gave rise to the forfeiture.  In analyzing excessiveness under the Eighth Amendment and CAFRA, the First Circuit weighed the "significant" harshness of the forfeiture of a $200,000 home in which the homeowner lived with her four young children against the fact that the trial court determined she was not an innocent owner and the fact that "[t]he penalty for the crime from which this forfeiture action arises is high – up to life imprisonment and over four million dollars in fines." *Id*.

As mentioned previously, the Second Circuit has yet to weigh in on how a district court should properly analyze excessiveness under CAFRA, particularly in a case where the claimant was not charged with the offense that gave rise to the forfeiture.  Therefore, it is not clear whether the Second Circuit will adopt the First Circuit's approach.  However, even if it were appropriate to look to offenses other than those that gave rise to forfeiture, the Court is unwilling to accept Claimant's assertion that the most appropriate offense for evaluating Mrs. von Hofe's culpability is simple possession under 21 U.S.C. § 844.

The Government has a compelling interest in making sure that property owners do not permit others to use their property to engage in illegal activities.  *See, e.g.*, *United States v. 418 57th Street*, 922 F.2d 129, 132 (2d Cir. 1990) (Through 21 U.S.C. § 881(a)(7), "Congress intentionally placed a significant burden upon owners to remain accountable for the legitimate use of their property.") (quoted in *United States v. 143-147 East 23rd Street*, 77 F.3d 648, 657 (2d Cir. 1996)).  *Cf.* 18 U.S.C. § 983(d)(2)(A)(ii) (allowing "innocent owner" exception to forfeiture under CAFRA for those who "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property").  To that end, Congress has enacted 21 U.S.C. § 856, which makes it unlawful to

36

maintain a drug-involved premises. That statute makes it unlawful to "manage or control any place, . . . as an owner, . . . and knowingly and intentionally . . . make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2).[15] *See also United States v. Bilis*, 170 F.3d 88, 92-93 (1st Cir. 1999) (holding "willful blindness" instruction appropriate in 21 U.S.C. § 856(a)(2) charge); *United States v. Chen*, 913 F.2d 183, 191 (5th Cir. 1990) (holding that "deliberate ignorance" may support § 856(a)(2) claim). The penalties associated with a hypothetical charge under 21 U.S.C. § 856(a)(2) would be a more appropriate touchstone for assessing the culpability of Mrs. von Hofe than the possession charge hypothesized by Claimant.

In fact, the Second Circuit's most recent *in rem* civil forfeiture case, *United States v. Collado*, *supra*, specifically references 21 U.S.C. § 856(a)(2) and its penalties in evaluating the culpability of a property owner who was willfully blind to the drug trafficking activities of her son, occurring right under her nose. *See Collado*, 348 F.3d at 325, *aff'g United States v. 464 Myrtle Avenue*, No. 98-CV-3948 (ILG), 2003 WL 21056786 (E.D.N.Y. Mar. 20, 2003). The Second Circuit affirmed the lower court's determination that the mother was willfully blind to her son's narcotics trafficking, see *Collado*, 348 F.3d at 327-28, and that the forfeiture of the entire building was not excessive because

her conduct constituted a violation of 21 U.S.C. § 856(a)(2), [and] . . . a violation

---

[15] Section 856 is commonly referred to as the "crack house" statute because it was originally introduced in the Senate as a part of the Emergency Crack Control Act of 1986, though it was eventually enacted by Congress as a part of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (1986). Regardless of its origins, 21 U.S.C. § 856 applies to criminal use of property involving any controlled substance, not just crack cocaine. *See generally United States v. Sturmoski*, 971 F.2d 452, 462 (10th Cir. 1992) (outlining the legislative history of 21 U.S.C. § 856).

of this statute would have a direct relation to the extensive drug trafficking on her property, [the mother] would fit within the class for which the statute was designed, the potential statutory fine would exceed the value of the forfeited property, and the harm to the public arising from her willful blindness was substantial.

*Id.* at 328.  *See also 143-147 East 23rd Street*, 888 F. Supp. at 585 ("Viewed as punishment for the claimant permitting its property to be used for drug trafficking, such a fine is not excessive. . . . A colorable criminal case may exist under [21 U.S.C. § 856(a)(2)] against the claimant . . .").

Though the scale of the drug transactions in *Collado* may be different (a fact that this Court takes into account in its assessment of excessiveness), the Second Circuit's analysis of the "willfully blind" property owner under 21 U.S.C. § 856(a)(2) in *Collado* is particularly relevant to this Court's assessment of Mrs. von Hofe's culpability in this case.  Any person who violates 21 U.S.C. § 856(a)(2) "shall be sentenced to a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both," 21 U.S.C. § 856(b), and shall be "subject to a civil penalty of not more than the greater of (A) $250,000; or (B) 2 times the gross receipts, either known or estimated, that were derived from each violation that is attributable to the person."  21 U.S.C. § 856(d)(1).  Had she been convicted of maintaining a drug-involved premises, Mrs. von Hofe would face a maximum term of imprisonment from six to twelve months under the Sentencing Guidelines and a maximum fine of $500,000 (rather than the maximum of $20,000 otherwise provided under the Guidelines), because 21 U.S.C. § 856(a)(2) authorizes a maximum fine of greater than $250,000.  *See* U.S.S.G. § 5E1.2(c)(4).[16]  In sum, to the extent it is

---

[16] According to U.S.S.G. § 2D1.8(a)(2), the base offense level for managing a drug establishment – where, as here, the defendant had no participation in the underlying drug offense – is four levels less than the offense level applicable to the underlying offense.  Because the manufacture of the sixty-five marijuana plants corresponds to a base offense level of fourteen, *see supra* note 12, the base offense level for maintaining a drug involved premises at the Property

38

appropriate to look to penalties for relevant offenses other than those that gave rise to forfeiture, the statutory maximum civil penalty of $250,000 and the statutory maximum fine of $500,000 are more appropriate figures for evaluating excessiveness with respect to Mrs. von Hofe than those proposed by the Claimant.

Of course, regardless of which particular criminal statute was used, the Court believes that it is fair to say that had the Government charged Mrs. von Hofe criminally and had she been convicted, she would not have received the statutory or Sentencing Guidelines maximums given her own degree of culpability and lack of criminal history. Therefore, she would have received a fine substantially less than the $124,000 value of her one-half interest in the Property. Nevertheless, as noted above with respect to Mr. von Hofe, the test under the Excessive Fines Clause is not whether the forfeiture is directly proportional to the sentence a particular defendant or claimant would receive for the offense committed, but rather whether forfeiture is *grossly* disproportional in the circumstances. The differential between the likely maximum fine for the offense at issue and the value of Mrs. von Hofe's interest is not the "orders of magnitude" difference that was presented in *Bajakajian*, where the maximum fine under the Guidelines was $5,000 and the value of the forfeited cash was $357,144, well above the statutory maximum provided for the offense. *See also 3814 N.W. Thurman Street*, 164 F.3d at 1198 (difference between maximum fine of $5,000 and $200,686 value of forfeited property made forfeiture

---

would be four levels less, or ten. Because Mrs. von Hofe has no criminal record, she would be assessed no criminal history points pursuant to U.S.S.G. § 4A1.1, and thus would have a criminal history category of one according to the sentencing table found in U.S.S.G. § 5A. A defendant with a criminal history category of one and a total offense level of ten would face a fine from $2,000 to $20,000 and a term of imprisonment ranging from six to twelve months. *See* U.S.S.G. §§ 5A & 5E1.2(b)(3).

excessive); *835 Seventh Street Rensselaer*, 820 F. Supp. at 694 (difference between likely fine of

$875 and forfeited property of $66,178 "borders on being aberrational").  Indeed, many courts

have approved of substantial disparities between likely maximum fines and the value of forfeited

items.  *See, e.g.*, *Ahmad*, 213 F.3d at 817-19 (forfeiture of $101,587.42 not grossly excessive

where Sentencing Guidelines maximum fine was $5,000 and statutory maximum fine was

$250,000); *817 N.E. 29th Drive*, 175 F.3d at 1310 (forfeiture of property valued at $70,000 was

not excessive where Sentencing Guidelines maximum fine was $50,000 and statutory maximum

fine was $1,000,000); *427 & 429 Hall Street*, 74 F.3d at 1172-73 (forfeiture of property valued at

$65,000 was not excessive where Sentencing Guidelines maximum fine was $40,000); *Reidl*, 164

F. Supp. 2d at 1199-1202 (forfeiture of property valued at approximately $1,193,521 to

$1,374,300 was not excessive where Sentencing Guidelines maximum fine was $100,000 and

statutory maximum fine was $1,250,000); *300 Blue Heron Farm Lane*, 115 F. Supp. 2d at 528

(forfeiture of property interest valued at approximately $150,000 was not excessive where

Sentencing Guidelines maximum fine was $50,000 and statutory maximum fine was

$2,000,000). "Given that excessiveness is a highly subjective judgment," the Court should be

hesitant to substitute its opinion for that of Congress, which has expressly provided for forfeiture

in the circumstances of this case.  *817 N.E. 29th Drive*, 175 F.3d at 1310.

    4.   <u>Conclusion.</u>

    Therefore, although the Court acknowledges that in the case of Mrs. von Hofe forfeiture

presents a close question, considering the legitimate interests of the Government in trying to stem

the manufacture and distribution of controlled substances through the forfeiture of property used

in such activities, the duration of the illegal activities that occurred in Mrs. von Hofe's home, her

own culpability and knowledge of those activities, the harm to the community and Government from such unlawful acts, and the punishments available for the offenses involved, the Court concludes that forfeiture of Mrs. von Hofe's interest in the Property does not violate the Excessive Fines Clause of the Constitution.

To be sure, forfeiture is a particularly harsh penalty for Mrs. von Hofe's conduct in this case. No one can help but sympathize with her plight. By all accounts, she worked long hours to support her family, whom she loved very much. Yet, she had a husband and two sons who were abusing drugs and turned her home into a drug manufacturing location. It certainly would have taken an extraordinarily strong-willed individual to force a husband and sons to stop the illegal growing, distribution and use immediately. Now, she faces the loss of the family home. Mr. von Hofe's decision to grow marijuana in the family home has truly turned into a nightmare for the entire family.

But to put this case in a somewhat broader perspective, the Court notes that virtually every week in federal courts across the country criminal defendants appear before federal judges on drug charges to receive sentences that are also often quite harsh, and involve substantial periods of imprisonment, even for those who might be considered relatively minor participants in the drug trade. That is the great tragedy of drugs. They indiscriminately destroy individuals, families and homes across the entire spectrum of our society. It is a tragedy that is played out each week in state and federal courts, often with individuals, unlike the von Hofes, who have no property or homes to forfeit. And so instead, they forfeit their personal freedom. Yet, the Supreme Court's Eighth Amendment jurisprudence teaches that the Constitution tolerates a wide range of punishments, including those that are very harsh. *Cf. Lockyear*, 538 U.S. at 66, 77

(upholding imposition of two consecutive terms of twenty-five years to life in prison for petty theft of approximately $150 of video tapes under California's "three strikes" law).   In light of all the factors analyzed above, the Court will not set aside and will not reduce the jury's verdict that Mrs. von Hofe must forfeit her entire interest in the Property.

## IV.

For the foregoing reasons, the Court DENIES Claimants' Motion to Determine Whether Forfeiture was Constitutionally Excessive [doc. #67].  Accordingly, the Clerk of the Court shall enter a judgment of forfeiture against the Property.

However, because the issues raised by this case are close ones and have not been directly addressed by the Second Circuit in a post-CAFRA case, Claimants should be able to pursue an appeal of this Court's ruling without fear of execution of the forfeiture.  To determine whether a stay of an order pending appeal pursuant to Rule 62(c) of the *Federal Rules of Civil Procedure* is appropriate, a court must evaluate the following four factors: "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest."  *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  Having weighed and considered these factors, the Court concludes that there are sufficient grounds to grant a stay of execution on the forfeiture pending appeal, and therefore, the Court *sua sponte* orders a stay of execution of the judgment of forfeiture pending appeal, without the posting of a bond.

**The Clerk is directed to close this file.**

IT IS SO ORDERED.


/s/      Mark R. Kravitz
         United States District Judge

**Dated at New Haven, Connecticut: May 31, 2005.**